Case number 15-7098. Matthew Corrigan, appellant versus District of Columbia et al. Ms. Rademacher for the appellant, Mr. Shifley for the appellate. Good morning. Good morning. My name is Tillman Brackenridge of the William & Mary Law School, and I'm just here to introduce Elizabeth M. Rademacher, who will argue on behalf of Mr. Corrigan. Thank you. Counsel. Good morning, Your Honor. May it please the court. On February 3rd, 2010, DC police violated Matthew Corrigan's Fourth Amendment rights when they searched his home without a warrant, without consent, and after he had been restrained outside his home. We asked this court to reverse the summary judgment from the district court below for all defendants for the following reasons. First, the warrantless entry occurred without consent and without indicia of danger to others. Second, no exception to the Fourth Amendment justifies the search of Mr Corrigan's home, nor may the district collaterally attack its unconstitutionality after its failed prosecution of Mr Corrigan. Third, the right against warrantless entry in such a situation is clearly established. And fourth, the district has an unconstitutional custom or practice in place which caused Mr Corrigan's rights to be violated. First, there were no indicia of danger to others. Police need indicia of danger to themselves or the community to enter a home without a warrant. So let's see. The district court at the end of its opinion made a series of findings. Yes, Your Honor. And the district court talks about sort of the two interests that need to be balanced here in terms of qualified immunity and concludes that, as I understand her position, that there were exigent circumstances. Yes, Your Honor. That is what the district court concluded. However, we argue that there were no exigent circumstances that justified this entry. So is your position that the police, having taken all of these precautionary measures and Mr Corrigan having been taken out of the house, the only reasonable action consistent with the Fourth Amendment would have been to have obtained a search warrant for his house or his apartment? The police could have done several things, Your Honor, including get a search warrant. They also could have not searched Mr Corrigan's home at all. Our position is that no exigent circumstances justified going inside without a warrant, though they had six hours to do so to obtain a warrant, and they did not. And moreover, we would argue that there were no indicia of danger that justified such a warrantless entry. So the indicia, as I understand it, on which the officers say they were relying in going in, was they had been called to the home of someone who was suicidal. At least that was their reasonable understanding, based on the information that they received. And it was someone who had military explosives expertise. He had a bag, a military bag, in his apartment that his girlfriend said, he said, contained military, but she should not touch it, raising perhaps a reasonable inference that there was something volatile or dangerous in it, perhaps. When they arrived on the scene, there was a smell of gas. They tried to get Mr Corrigan to come to the door. He didn't. He delayed. They don't know why at that time, and they're just acting on the information that they have. And Mr Corrigan, as they understand it, is generally pretty miserable. He has PTSD. He is not being cooperative. He has sent him to a false address when, after they speak to him on the phone. So is it your position that no reasonable officer, when confronted with those circumstances, would think that there's probable cause for concern that there might be some explosive causing danger to the community? Your Honor, we dispute several of those facts or inferences that are posited by the district for why the officers would have had a reasonable suspicion. Okay, so let me just take two questions before you dispute the factual basis that I listed. If those are, in fact, undisputed facts of record, do you think on the basis of those facts, there is nonetheless not reasonable cause, probable cause to believe that there is a risk? Your Honor, we would say no. We think that Mr Corrigan's of veteran and the fact that he has PTSD caused the officers to speculate about what would be happening inside his apartment. But that these speculations or these inferences that they made were unreasonable because they automatically jumped to the conclusion that he had something dangerous in his home simply because he's served in the military and because he has a bag of military items. Okay, so that's your that's your purely illegal. And then you said you dispute some of the facts. So if you could tell us what you think are the material factual disputes and just catalog this. That would be helpful. Yes, Your Honor. First, there's a dispute about whether it was actually a smell of gas at all that night. For instance, on J. 53, the police internal report says that there was a noted strong odor of gas. However, none of the police that are defendants of this action smelled gas on the night in question. For instance, on J. A. 1 93 in Sergeant Pope's deposition, he says that he didn't smell any gas and at J 3 77 Officer Leon also says he didn't smell anything undisputed. They had the gas company turn off the gas in the area. Is that correct? They did call the gas company, Your Honor, to ask them to turn off gas. However, it is within the record. There are some inconsistencies about whether anyone actually did smell gas that night. What's your other disputed fact? Other disputes of fact, Your Honor, include the fact that Mr Corrigan said that he wouldn't hurt anyone else, according to the district. Now, on J. A. 5 57, Mr Corrigan says in his deposition that he did not say he wouldn't hurt anyone else. He says that first he was asked if he would hurt himself and then if he would hurt others, and he answered no to both questions. However, the district says that Mr Corrigan said affirmatively that he wouldn't hurt anyone else. So we would say that there is a genuine dispute of that fact in the record. And also, Your Honor, there is a dispute about whether or not the police would have gone inside at all that night if they had smelled gas, if there were any gas. For instance, on J 6 19, Lieutenant Glover says that they needed to go inside because there was a risk of a natural gas leak. But then on J 2 93, Sergeant Pope is talking in his deposition about how they would have backed off if there was something dangerous or an explosive that could have been a risk to the E. R. T. Team. What about the district court's finding that they didn't know where the girlfriend was and she and a plaintiff that had a somewhat testy relationship? Your Honor, the fact that Mr Corrigan's ex girlfriend had been contacted, the police could have asked her where she was, but they did not. And a reasonable jury could find that there was no reason to believe that she was inside the home. Moreover, just because I guess my question is, you're if she's being held by him, she's not going to be able to signal to them where she is. I mean, maybe they didn't investigate far enough, but I'm just trying to understand because when the district court makes the findings it makes, it doesn't rely on these disputed facts that you're talking about in terms of concluding that there were exigent circumstances justifying the entry. Your Honor, when the police spoke to Mr Corrigan's ex girlfriend, they didn't ask her where she was at all. As far as the record indicates now, the fact that they automatically assume that she was inside and that Mr Corrigan had hostages we are saying is unreasonable because it was speculative. They also asked Mr Corrigan's landlord if he had, you know, any overnight guests or if you live alone. The fact that Mr Corrigan has ever had an overnight guest in his life does not indicate that he had overnight gets that night. And moreover, no one saw an over gets overnight gets that night. So we're saying that this is at best speculative. Do you think that officers have to be able to establish both probable cause and exigent circumstances? Your Honor, in this court is held in the United States be Dawkins that they must have exigent circumstances and probable cause to go inside for the purpose of the exigent circumstances doctrine. And that's not probable cause that crime has been committed. They'll find evidence of a crime, but probable cause to believe that there is such an exigency. Is that how you understand it? That's my understanding, Your Honor. In the Evans case that the deep Oh, I'm sorry, Your Honor. Did you have a burden to show exigent circumstances? I think there's a line, at least in your brief, characterizing it is an affirmative defense, and I wasn't sure whether you believe you cited a case for that. Your Honor, I believe what we were referring to in the brief is that at the district court or sorry, not the district court level at the D. C. Superior Court level that there was an affirmative duty on behalf of the district to show that just not suppress the evidence that there was some exigent circumstance that justified their entry. I believe that's what we're referring to. Whose burden is it here in a civil case? In a civil case, Your Honor, I believe that the plaintiff has to show that there was no probable cause, but that is to show a lack of exigent circumstances. I'm not sure, Your Honor. So the plaintiff shows warrantless entry without justification under the to show there was no exigent circumstance giving a justification. Yes, Your Honor. Now, under the Evans case from the D. C. Court of Appeals, we feel that it is related to this case and, you know, very helpful for understanding the issues here. In that case, the court said that police must have an objectively reasonable belief that they need to go inside someone's home. They can't standard. Instead, they need an objective, reasonable belief. And what we're arguing here, Your Honor, is that there was no objective, reasonable belief. Moreover, Mincy tells us that, you know, an emergency can justify such a search, but it could only happen if you can actually articulate specific and articulable facts that there's a reasonable belief that there's an exigency that exists. In this situation, there was no such belief. Would you like to say the rest of your time for rebuttal? Yes, Your Honor. Thank you. Okay. Good morning. May it please the court? Carlos Schifferle for the District of Columbia Appellees. The District Court correctly determined that the search was reasonable under the alarming and dangerous circumstances that officers confronted that night. At the very least... What about the fact that the officers had taken all of these precautionary steps? Gotten the gas company to turn off the gas. They'd evacuated the building. They'd taken the plaintiff into custody. So at that point, why wasn't a warrant required if they wanted to go into his apartment, especially when he told them he did not consent and he closed and, as they said, locked the door? Because the exigency existed still at the time that Mr. Corrigan left his apartment. What was it? Well, there was the reason that was given for the search, and they... First of all, that there was the concern about persons inside who might need assistance. They evacuated the building. They evacuated the people upstairs in the separate unit, but as far as the basement apartment, there was a concern that there might be somebody inside... Mr. Chivrely, they never even asked the girlfriend where she was, and they said, oh, there was no way to confirm her location. They would think the first way one would try to confirm a location if one is concerned about a person in danger is to ask that person. Yeah, well, the record unfortunately doesn't reflect whether that was asked and what the response was, but the point is, as Lieutenant Glover testified, because it's a conversation by cell phone, you cannot be sure of the girlfriend's location. But just belies the notion that there was any active concern at that time that she was in there with him. It seems like that was... I mean, they thought she was in there with... Where are you? Are you safe? We don't have any information that any of that was pursued. Right, but regardless of whatever response she might have given, police would not be able to ascertain her physical location through a conversation by cell phone. She may be under duress, or there may be some other reason she is not. But if she said, hey, I live two blocks away. Do you wanna talk to me? Send someone over. That would have resolved that, right? Right, but we have no... I would submit it's Plante's part, and we have no indication in the record that that would have resolved it. In addition, you're not sure whether there are other persons in the apartment, other people. But there were actually two searches here, right? The ERT goes in there, they find no person, no contraband, no... I mean, nothing happens at that point, and yet there is a second, more intrusive search. So once they know there's nobody in there that's in any immediate danger, why then would they get a warrant? Well, there is the additional concern about hazardous materials, and that is an exigency that would excuse the warrant requirement. There's no contention even that a warrant would be a warrant. What's the basis of the concern that there are hazardous materials here? Well, we do have to look at the totality of the facts and circumstances. I think Judge Pillard, you laid out the facts that the officers had, and that they are undisputed facts. The only contest I heard this morning was with respect to the gas, but it is undisputed that police at least received reports of a gas leak, that the gas company did come out and shut off the gas line. So by the time they're searching, though, the gas leak is no longer a problem. If that was a problem, it's been turned off. So we're not worried about that. So what's the basis of the exigency that there is hazardous material here? Well, I disagree that we're no longer concerned about gas. The gas could still be remaining in the apartment. It could be a symptom or an indicator that there is some hazardous condition that remains. I would point this court to the Tyler case, Michigan versus Tyler, that involved the fire, and the Supreme Court explained just because the fire's out doesn't mean it's not reasonable. In fact, it is reasonable to investigate further to determine the cause in order to ascertain whether there is some continuing hazardous condition existing. And we have all the facts and circumstances that were discussed earlier. So any veterans? I'm sorry. Just well, first of all, you know, the gas company has turned off the gas. Um, if there were continuing circumstances of that kind, you would think it would be the gas company's employees and not the police who would be trying to verify that. But leaving that aside, what else is there? Well, there are the various facts that that we had a several hour barricade situation in which Mr Corrigan had been threatening suicide with a gun that he had weapons, multiple weapons, that he had a bag full of unknown military items, which had he had instructed his girlfriend specifically not to touch that he had ex that he was an expert in improvised explosive devices that he had trained others. So you're now you're going to say that if you are former military, you've got a green duffel bag and it may have military items in it. This justifies people just coming in and doing a completely intrusive search of your home against when you've not given consent. No, you're not. I'm not saying that at all again. Once again, all the facts and circumstances, the only other facts you have is he called mistakenly the suicide hotline. So it's the rule that anyone who calls a suicide hotline who has military training and refuses to allow the police to enter his or her apartment well, is subject to a warrantless search. No, Your Honor, because there's a lot more facts than that that he lied to police about his whereabouts. How many units are in this building? Just two. There's a basement apartment and the individuals living above. All right, so everybody is out of the apartment. And it's Judge Brown's question. Points out the first search determined that there was no one inside. That's correct. And so, but we still have the concern about hazardous materials. And is the concern tell us more what they're worried about. So there was natural gas or washing gases. Turn it off. Tell us. It's not the guns. What is the hazardous material concern? Well, the guns and ammunition can obviously contribute to a hazardous condition, just as the gas can. I would also point out to we do. We do argue, even though the officers didn't search for firearms, that the existence of the firearms, the need to secure them to prevent them from being used and concealed was it was an exit in circumstances. The question is why you don't have a warrant. So, yes, you may want to secure those firearms and the ammunition, but that isn't something that you couldn't get a warrant to deal with. The question here is what was exigent? What was the emergency? It's exactly the Hendricks case, for example, which we've relied upon in other cases from this court where the firearm, the existence of the firearm, the concern that it could be used later or concealed later created the exigency by whom you have taken away Mr Corrigan. He's no, he's not under arrest. He has voluntarily admitted himself. He could decide. In fairness, he voluntarily committed himself. But as soon as he admitted, as soon as he released himself, he was taken to the Fifth District and charged. So the implication is, if he hadn't admitted himself, he would have been charged that night. No, you are. It was three days later. He was arrested pursuant to an in the hospital three days. That's right. But the concern was he could, as soon as he checked himself into the hospital, could have come back out. He could have had somebody else arrange to retrieve the gun. I mean, it would be less intrusive to post someone outside of the house when he comes. I mean, I don't think that's required under the case law. For example, the same argument could be made in Hendricks and other cases. We said the facts in those cases have show, you know, those are factually, they don't get you all the way there. So what we're facing is a situation of what is the exigency in these facts? One of the difficulties that I think you have is that it's pretty clear from the officer's testimony that they believed when they came in one of these helping calls, you know, responding, not investigating crime, but somebody in basically save him without officers getting killed that they didn't need probable cause. They pretty clearly said that. So they're just like, Oh, we're here on that kind of search and therefore exigent circumstances and therefore we're not even thinking about probable cause and kept someone there and we stayed in and went in with camel's nose under the 10 allowing them, they seem to think. Well, first of all, the test for exited in circumstances, not probable cause. The Supreme Court indicated in Fisher, for example, it's an objectively reasonable basis to believe that someone might be needing assistance or that there might be hazardous materials inside. We also have the community caretaking doctrine, which we haven't talked about, and that does cover more broadly circumstances that might not fall within the narrow scope of exigent circumstances. We discussed each other. You're not saying that you can invade a home and do the kind of search that the officers did here without. I'm for shorthand referring to it as probable cause, but an objectively reasonable belief based on the facts and circumstances known to the officers that there is an exigency that there is correct. Correct. There has to be some some basis, and it's an objectively reasonable basis, reasonable suspicion type basis. But really, well, I don't know. I don't think it's quite as high standard is probable cause. I think it is. It is difficult to articulate without a specific factual context, and that's why also qualified immunity comes into play here as well, because we don't have even assuming that the search was unconstitutional. A reasonable officer could have believed in life, clearly established law, lack of clearly established law, indicating that this search was unconstitutional in these particular circumstances. So we have a qualified immunity argument as well. I thought that the case law said the Supreme Court said exigent circumstances. You have to have probable cause to believe. No, I think it's the I think it's the exigent circumstances based on criminal activity. For example, the concern that criminal evidence is going to be destroyed or the hot pursuit of a suspect, a criminal suspect in the criminal context. Yes, probable cause where the exigent circumstance and the fact the need to help people inside who might need assistance and to check for hazardous materials. Those aren't criminal based investigations. And so we're not talking about probable cause. Why? Why? The purpose is a threshold to protect the privacy of the home. And even though the content of the showing, as you correctly point out, would be focused on crime, but on some other counterbalancing governmental interest. Why would it be a lower level of concern in the in the non criminal law enforcement context? That would be that would suffice to override the privacy. The courts have talked about this, that that where the officers are not engaged in the competitive enterprise of ferreting out crime, that there's less of a concern. There's less of a need for the warrant requirement. In fact, the warrant requirement may not even apply at all because it applies in the context of criminal investigations. But where there's no criminal investigation, when the officers are acting out of community caretaking interests, there's not even warrant requirement or there's not a warrant requirement, and there may not even be a warrant to obtain in the first place. Of course, this court has not decided whether that doctrine applies in this context. Sure. But that ambiguity creates qualified immunity for the officers that that there is not that clearly established law. We pointed to cases for other circuits law. And if you want to go into somebody's house and you don't have probable cause to arrest that person, you've got to get a warrant. Well, that's true in the criminal context, which is not basically what we have here. You're arguing where they're all these 20 police officers in the barricade. It's not a criminal situation, and you've evacuated the building. So anybody who has firearms in the house, you can go in to get those back or get somebody else to go into his apartment and get the guns. I mean, that's just one of the bases we're relying on. We're not asking for anything more than than Hendricks decided. And other cases of this work. I mean, you got it. So, but even if the law were unclear, even if there are concerns about the constitutionality of the search, the existence of qualified immunity would cover the officers here because there is no clearly established law. The case with any analogous factual circumstances, we pointed to the Fisher case from the Supreme Court, the inner seal case in this court. The plaintiff starts with the basic proposition that if you want to come into my home and you're a law enforcement official, you need to get a search warrant. That's where we start. And so if you don't have a warrant, you've got to establish that one of these limited exceptions applies. Well, I and when I first read this case, I thought, well, the police acted very responsibly. They got the gas company to turn off the gas. They took the other people out of the building. They tried to contact the plaintiff. When they finally did, he came out of the building and admitted himself to this hospital. Well, as the Supreme Court setting Kentucky versus King, the ultimate touchstone is reasonableness and that reasonableness applies even to exceptions to the warrant requirements. So reasonable exceptions would apply even when a warrant is required. But the exigency can't be mere suspicion, though. Well, all I can do is point to the Supreme Court and its objectively reasonable basis to believe I would discuss the facts in Fisher, where the there's no indication that anybody was inside. But the Supreme Court said it was still reasonable believe that there might be a person who was the at the receiving end of what was being thrown, even though there was no evidence whatsoever that there was, in fact, anybody else inside the home about the first search. I'm sorry. What about the first search? Establishing? No one was in the apartment. That's true. But then there's the concern about hazardous materials. That's all we're dealing with here. That's the only justification for going in back in to the apartment. Well, I mean, everything else is taken care of because the police have evacuated the building, turned off the gas. Well, the concern about somebody else being inside is taken care of. But the larger public safety concerns are larger public safety concern that there is some hazardous condition inside that apartment so that there could be an explosion that that could affect. I mean, these are these are row houses, so their houses immediately joined on both sides. Normally, with the gas company come to check for for leaks, there's there's no, I mean, the police police officers in a trained right. But you would respectfully I can't even know. I can see that in this particular situation, under these sets of facts that you would send the gas company and rather than police officers, where you have the indications of military items in the house of weaponry, there was thousands of rounds of ammunition. They didn't know a weapon with a gun and ammunition with nobody to shoot it. Just tell me more about what the concern is. Well, in terms of the hazardous condition, just looking at that right, that the weapons could be or the ammunition could be booby trapped in some way that they did actually check for that there, you know, some sort of explosive condition. There's some bomb that's been set. It's not that there's just guns and ammunition. It's not that there's just Washington gas gas. Don't they have to think that there's something actually been, you know, as they say, a fused object. There's something that's been set to go off otherwise. Well, an objectively reasonable basis to believe that that might be true. Yes, that it's been set. I mean, something intentional or it could be something unintentional. Something had become unstable. One of the military items had become unstable that perhaps in the course of contemplating suicide that that he that he rigged something up that whether intentional or unintentional, the officers are operating in uncertainty and they're always going to operate uncertainty in these particular cases. And I think in light of the Supreme Court cases, Fisher and others that address the circumstances is quite different on its facts. There's blood everywhere. There's smashed windows. There's a smashed up pickup truck outside. There's there's a sort of an ongoing melee of violence that they see the guy through the window, you know, shouting, pummeling. Yeah, but there's no indication that anybody else is there. The blood. He has a cut on his hand, which officers can see. In fact, they can see into the home well enough to see him and what he's doing. The blood is explainable by the cut on the hand. Um, even if we have much more, it seems like there's some there's some interesting going in someone who's been an accident and bleeding. Well, that well, that we have. We have in this case, many more facts supporting a search than than in Fisher. We have somebody who is clearly suicidal, called a suicide hotline and threatened to kill himself with a gun. We have the existence of firearms. We have military items again. None of these facts existed in the Fisher case suffering from post traumatic stress disorder. Domestic issues with no friend. No indication that this man has any explosives. No indication that he's a bomb builder. Well, I think there is so that he is an expert. No, dismantle them. Well, that's still expertise in the subject. I understand. But what do the police need to come into my house? Well, I mean, we have. I want to emphasize that, you know, each fact you could look at each fact in isolation and say it's relatively mundane. It doesn't arise to the level of an objective. I was trying to get you to focus on is the police have taken these precautionary steps. The gas is off. They've evacuated the building. The plaintiff is in custody outside of his apartment, right? Then I was stopping there. But then Judge Brown's question points out there was a first search. There is nobody inside. That's correct. But that doesn't eliminate the hazardous condition that might exist in the military. Or it has weapons. That's part of the factual context. It's not the entirety of it. And the Supreme Court said that even lawful conduct can be a basis for concern. When you look at the totality of the circumstances, you also have to judge the officers not, you know, with hindsight, but from their perspective on the scene in a tense and uncertain situation where they have to react and write a barricade. Everybody's out of the building. The gas is off, and they're just waiting for this man to respond to phone calls. And he finally does. But I mean, four hours has passed. Five hours. Yeah, well, it's a constantly evolving situation. Information is coming in there trying to contact Mr Corrigan. He's not responding. Things develop and occurs. I would also point this court to the Ninth Circuit decision. Another Fisher case in which the court said that in this type of standoff barricade situation that it's unreasonable to require officers to go get a warrant at the same time. They're trying to deal with a situation like this. Their efforts should be focused on peaceably resolving the situation and to require them to go get a warrant. It's just bad policy. In fact, it would suggest that police officers should act hastily in order to avoid creating the time in which a warrant could arguably be obtained. It also encourages individuals to continue the standoff so they have an argument that wall warrants in the circuit. It only takes 30 minutes to get a warrant, according to its case. But here, I gather one of the supervisory personnel said it would take three or four hours, 45 hours, and that was undisputed. And it was. I don't understand that at all. Since judges are on emergency call in the Superior Court with magistrates, U. S. Attorneys are on emergency call. Right. Lieutenant Glover testified that, and this is based on his experience that it's late at night. The weather is very poor. It's snowing. It's icy. There's no provision in the Superior Court rules for a telephonic warrant. Eso it's a perfectly so the Fourth Amendment set aside. No, Your Honor. I think I think we've decided to be the explanation. No. All right. But there I see conditions, so we just don't worry about the Fourth Amendment. No, Your Honor. I was just responding to the question about how long it would take to obtain the warrant, and that's part of the calculus. Part of the fact that it would take four or five hours to get a warrant. And in that amount of time, a lot of things could go badly. There could be in somebody inside needing assistance. Those 45 hours could be critical. Okay, if we're nobody inside. Okay, if we were just talking about the additional incremental and you know, if he has guns and he's a military man who knows how to disable bombs and he's suicidal, but he's outside. Yeah, in police custody. Well, we have. We have all the facts. I'm not limiting myself anyone, and I would point out qualified immunity as well. What about Judge Pillard's were you about? Where did the police indicate they were concerned that there might have been some fumes making emergency? I'm sorry. Did you? Did you have fumes? He had set a bomb again. It's not limited to him intentionally setting a bomb, but the existence of the military items that, you know, the girlfriend had been told do not touch his military expertise, his suicidal state, post traumatic stress disorder, depression. He was taking medications. This is in a highly unstable, volatile situation. The you have to look at all those facts and circumstances to consider whether a reasonable officer could believe even again, even if this court is not inclined to find the search is constitutional under qualified immunity and clearly established law. There's no clearly established law that would say under these entirety of facts and circumstances we have here, that would be unreasonable for an officer to believe. But this burden is incredibly broad because you're saying, well, the community caretaking exception is broader than exigency. So let's assume that's true. But I see no limiting principle to what you're describing. Someone calls a suicide hotline doesn't even mean they're suicidal and their indications in this record that that was that was not the case that he that he actually accidentally got the suicide hotline. But that's not the information police had. Let's assume that the police think that that he's suicidal. But the only other thing they have, um, is in for once you put that aside, just about everything else you're describing could apply to very many people. Um, ex military, um, has firearms, knows something about I. E. D. S. So. So that sets you up for this very broad ranging search. But the evidence, the undisputed evidence is that Mr Corbyn was quote an expert in, uh, uh, and provides explosive devices. And we have we have all the facts and ex girlfriend who says he used to dismantle I. E. D. S. And he has a green duffel bag again. You know, there are going to be a lot of people in the population who have that experience. So if that's it, that's all there is. Well, I don't think a lot of people are experts in improvising explosive devices and actually train others. This is also undisputed train others in handling these devices. That seems to me a very small population that you make the leap that he's a bomb builder because he knows how to take them apart. Then you make the leap that there's something hazardous in his apartment. Well, not just from that one fact, there's all the facts and circumstances here. Um, especially for this burden. Is it to show exigency? I mean, the I think it's, for example, says, you know, warrantless search does require probable cause, whether it's of the exigency or of criminal conduct. And it is the government's burden to show that the conditions obviating the warrant requirement are present. I think it's Mr. Adam Walker acknowledged that it is the burden on the plaintiff in a civil case, ultimately to prove her case, his case. And so the burden of proof is on the plaintiff. I would also point to the fact that on qualified immunity, this court in Dover says District of Columbia found qualified immunity because exit in circumstances was not clearly established. That case had to do with removal from a child from a home. But the point there that that case involving sorry involved the removal of a child from my home. But the issue was in the home. Right, right. But in awarding qualified immunity, this court recognized that the scope of the law regarding exigent circumstances is not clearly established and granted qualified immunity. They are acquainted to the McDonald case from the First Circuit, which also granted qualified immunity based on the community caretaking doctrine. It recognized the uncertainty of the doctrine was precisely why the officers were entitled to qualified immunity. In that case, once again here, we've relied upon that doctrine to the extent the law is uncertain on and doesn't support the constitutionality of the search under that doctrine does warrant qualified immunity is the First Circuit held in the McDonald case. I would also point out that officers Pope and Leone relied upon Lieutenant Clover and his directive to search the apartment and so that their reliance on a supervisor's directive in a situation where they were not in a position to question it, given given the tense and rather dangerous and alarm. Wouldn't apply to the District of Columbia. And we have, as I mentioned before, we have the lieutenants Glover Glover, um, testimony that he believes that, you know, 99.9% of the time when they come in response to, you know, something like this, a suicide situation, they barricade, they're gonna go in. He says they don't need probable cause to go in. This is a at least a factual issue for trial on the District of Columbia's liability here. Well, because municipal liability liability does require rather rigorous standard of culpability and causation so that it doesn't collapse into respond. Yes, we are your liability. Uh, what Lieutenant Glover testified to does not support. It's not sufficient to support a theory of municipal liability. This is the emergency response team, and they are only deployed when there are specific criteria that are met dangerous situations like this hostage situation, barricade situation, high risk warrant. And so it's not surprising that they typically go in. And when they do go in, it is either because they have a warrant. And so the search is lawful, or they have exigent circumstances. Mr Corrigan was setting up an explosive device inadvertently or inadvertently when they have to storm the building when he didn't respond when they first got there. Well, um, again, this is an evolving situation. So all the officers know initially is that the person's suicidal. They try to contact him, contact and contact them. Efforts are unsuccessful. They gather more information. They learn about military background. So there's an expertise with IEDs. And so the situation is developing. And so I don't know what point. Maybe, um, what your honor pose might be true. But even then, I don't think there's any record or any evidence to sort of question police judgment or police tactics and handles. He feels he clearly feels like it's quite gratuitous. They're going in after after the fact that sweat for people. He's out of there, and they go in. And, you know, he also has a challenge against the scope of the search, which I mean, I know searches are your house doesn't look good after it's been searched. But clearly, he also thinks this was given the stated interest that this scope of the search was excessive. And so I guess the question is, if it feels to him, gratuitous and destructive, you know, the government needs to say, No, no, we were doing promptly everything we genuinely had to do in response to the threat. And I'm thinking, Well, really, there's a threat that the whole building is gonna blow up. You're gonna be outside waiting for him to wake up and pick up the phone. Just there's a little tension there. I mean, I don't know that even if that's true, that that rushing into the building with somebody who has several guns, that doesn't sound like a good idea. And certainly, again, there's nothing on the basis of this record in which you can question the officers in that particular situation. It's not obvious that that would be the right decision between the you know, objective and reasonable belief that there's a time sensitive, explosive situation that might harm, you know, seriously harm this block and the decision not to further inquiry into that earlier. Oh, by actually forcing entry into the home when the individual is inside, he's armed, he's suicidal. He's got all kinds of military inside because at the beginning they've just come and they've heard from the girlfriend, but they've gotten no response from him. They know, they know he's a veteran. They know he's had the experience. They smell the gas. They're getting no response from him. You know, maybe he's killed himself already, and the thing is gonna go off in five minutes. I mean, that's the difficult situation of police officers face. They have to operate under these immense uncertainties. They have to make decisions with limited information. There are very high risk situations. You know, this this is the sort of thing why the Supreme Court is recognized that way. We evaluate these situations from the perspective of an officer on the scene, and we and we recognize and give deference to their judgments in these sorts of situations because it's so easy to second guess in hindsight what they did when when, you know, it's simply unfair to judge them in that way. So is it? Is it immaterial that the police say that they found it very important that he turned around and locked the door when he came out? That that's immaterial, no? Oh, no, that that is. That is part of the calculus. Part of the factual matter. No, it's undisputedly locked the door. Well, it's disputed in this regard. They were drawing an inference from him taking the care to go back and lock the door when, in fact, I think there's a dispute in the factual dispute in the record. He says he, you know, turn the little tab in the doorknob and then actually mistakenly pull the door closed. Oops, locked it. So he didn't actually go and, you know, do anything. He just stepped out, closed the door, and the officers saying, Oh, no, we've never seen someone take so much care to close the door. So that seems like, at least in the record, there's a factual dispute. And I think either you would say, No, that's not material or that has to be tried. Likewise, they have this seem to place a lot of emphasis on. I'm not intending to hurt anyone else. Pregnant implication that I have already heard someone. That's not what he said. He said, No. So is that a factual dispute? Is that material? Because they seem to be acting on Oh, he implied there's someone else. Okay, well, I heard so I think you have to say those are not material or you have to say we need to resolve them. Well, as to the latter, no, there's no factual dispute. What the police negotiator was told by Mr Corrigan was that I'm not intending to hurt anybody else. And the negotiator relayed that to Lieutenant Glover. What plan is talking about is a different conversation with the hotline call taker where he says he was asked if you tend to hurt somebody, and he just said no. So there's two different conversations we're talking about. It's not a factual dispute as far as the door being locked. Um, uh, well, the testimony, as I recall, is that they also saw him close and lock the door. But in any event, however you characterize the conduct, the officer said that he had never seen anybody in a barricade situation act like that, that that was unreasonable, and that was suspicious to him. And that is the sort of inference that officers are allowed to draw. I would point to the Ryburn versus Huff case in which, uh, an individual didn't respond to inquiries by the police. And then after talking to the police man back inside, the lower court said, Well, that's that's lawful. There's nothing inherently suspicious about it. It's lawful conduct. And the Supreme Court said no, that a reasonable officer could be legitimately concerned, even though you can explain away the conduct, even though you can call it innocuous, even though it's lawful, it still can be suspicious. And an officer is entitled to rely on his or her suspicion in these circumstances. And at the very least, the officers would be entitled to qualified immunity. Just on that question. I'm sorry. On that question of qualified immunity, the district court here doesn't really address the scope argument. Doesn't that have an implication for whether qualified immunity is appropriate? No, Your Honor, there was no scope argument that was raised below. The only argument that was raised, and as I understand, continues to be raised, is that they should not have searched for hazardous materials at all. The bomb technicians should not have gone in at all. They don't dispute that all the bomb technicians did was search for hazardous material in places where the hazardous materials might be, that everything was pursuant to establish national protocols. There's no dispute about the scope. In that sense, it's only whether that incremental intrusion. I don't want to concede that there were two searches here. There  but in the overall scope of things, all the facts and circumstances, it was reasonable. And so that's that scope argument is not. It's not a basis for reversal or or being. All right. Thank you. Okay. Thank you. Council for going Thank you. Thank you, Your Honor. We just have two points that we would like to make. First, this case is inappropriate for summary judgment. We would just reiterate that this should not have gone to summary judgment. The district court relies on facts that are in dispute, including anyone, including Mr Corrigan, saying that he wouldn't hurt anyone else on page 6 18 and the purported concern about gas on page 6 19. These facts are in dispute, and arguably this case should not have been granted summary judgment for that reason. So the five I think it is reasons that the district court gives you're saying even if those reasons are not disputed, they are inadequate. To show exigent circumstances that a reasonable officer could enter. Your Honor, we're saying that a reasonable juror could find that there were because of these disputed facts and evidences, they could find that there was no action circumstances justifying that entry. And I also believe they might have misstated my position. It is the burden for the defendant to prove that there is an immunity defense. So in this situation, we are saying that we have met our burden and what's to prove an immunity defense or prove exigency immunity defense. Your Honor, I believe that my mistake. I believe he accidentally misstated my position, but I just wanted to reiterate that it's on the defendant to prove an immunity defense in this situation, and that has not been proven here today. So you heard counsel for the Apple, we say that in response to Judge Brown's question that in the district court, no objection was made to the scope of the search. Your Honor, I believe docket entry 1 20 at page eight. We did raise arguments about the scope of the search that it was not narrowly circumscribed. So these arguments have been made about the scope of the search. Thank you. Anything further? No, Your Honor. If there are no further questions, we'll take the case under advisement. Thank you, Your Honor.
judges: Rogers, Brown, Pillard